UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Andrea L. Dammann et al., *on behalf of herself and all others similarly situated*,<br><br>Plaintiffs,<br><br>v.<br><br>Progressive Direct Insurance Company,<br><br>Defendant. | Civil No. 15-3149 (MJD/FLN)<br><br>**REPORT AND RECOMMENDATION** |

_____

Eric N. Linsk and Robert K. Shelquist for Plaintiffs.
Richard D. Snyder, Todd A. Wind, and Anupama D. Sreekanth for Defendant.

_____

**THIS MATTER** came before the undersigned United States Magistrate Judge on November 13, 2015 on Plaintiffs' motion to remand to state court (ECF No. 7). This matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. Order, ECF No. 12. For the reasons that follow, the Court recommends that Plaintiffs' motion be **DENIED**.

**I. FINDINGS OF FACT**

Plaintiffs are Minnesota residents and purchasers of automobile insurance policies through Defendant Progressive Direct Insurance Company ("Progressive"), an Ohio corporation. The Minnesota No-Fault Act requires all Minnesota automobile drivers to obtain insurance plans that provide coverage for $20,000 medical-expense loss and $20,000 for economic loss. Minn. Stat. §§ 65B.41–65B.71. Under the provisions of certain insurance policies sold by Progressive, Progressive

1

applies a $100 deductible to its insureds' medical-expense coverage and a $200 deductible to its insureds' economic-loss coverage, so that insureds who have $20,000 in coverage and incur that amount or more in medical or economic-loss expenses receive a benefit payment of only $19,900 or only $19,800, respectively. ECF No. 1-1 at 3. The Plaintiffs in this case are those who incurred medical expenses of $20,000 or more but received only $19,900 in benefit payments, $100 below the statutory minimum. *Id.* at 4.

Plaintiffs initially filed this class-action lawsuit in Minnesota state court, alleging that Progressive violated the Minnesota Consumer Fraud Act ("MCFA"), the Minnesota Deceptive Trade Practices Act ("MDTPA"), the Minnesota Declaratory Judgments Act ("MDJA"), and Minnesota state common law by selling insurance policies with benefits that fell below the statutory minimum. *See generally* Compl., ECF No. 1-1; *see also* Minn. Stat. §§ 325.68 *et seq.*, 325D.44 *et seq.*, 555. Specifically, Plaintiffs contend that each member of the putative class is entitled to reimbursement of $100 medical-expense shortages; revenue resulting from the under-payments; refund of premiums; injunctive, declaratory, and equitable relief as necessary; and attorneys' fees as allowed by law. ECF No. 1-1 at 8–14. Plaintiffs seek to represent a class consisting of:

> All persons covered under Progressive automobile-insurance policies in Minnesota who incurred more than $20,100 in medical expenses and yet were paid benefits by Progressive of less than the minimum set forth in the Minnesota No-Fault Insurance Act.

*Id.* at 5. Individuals who purchased similar policies through Progressive affiliates or who may be entitled to payback of a $200 lost-wages deductible under the Progressive Direct policies are not included in the class definition. *Id.* at 3. Furthermore, Plaintiffs do not request punitive damages, although they do seek declaratory relief as well as disgorgement of the premiums. ECF No. 1-1 at 13.

On July 27, 2015, Progressive removed this action to federal court, claiming this court has jurisdiction under the Class Action Fairness Act ("CAFA"). Notice of Removal, ECF No. 1; *see also* 28 U.S.C. § 1332(d). Under CAFA, federal jurisdiction over class actions exists when there is minimal diversity, at least 100 class members, and the amount in controversy exceeds $5 million. 28 U.S.C. § 1332(d)(2), (d)(5). Plaintiffs now seek to remand this case back to Minnesota state court. Mot. to Remand, ECF No. 7. Specifically, Plaintiffs argue that Progressive cannot meet its burden to prove that the amount in controversy exceeds $5 million. *See generally* Mem. in Supp. of Mot. to Remand, ECF No. 9. Plaintiffs do not, however, dispute that there is minimal diversity or at least 100 class members. *Id.*

## II. CONCLUSIONS OF LAW

Federal jurisdiction over class actions was greatly expanded after CAFA was enacted. Congress' intent was made clear in the Senate Judiciary Committee Notes, which state:

> New section 1332(d) is intended to expand substantially federal court jurisdiction over class actions. Its provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant. As noted above, it is the intent of the Committee that the named plaintiff(s) should bear the burden of demonstrating that a case should be remanded to state court (e.g., the burden of demonstrating that more than two-thirds of the proposed class members are citizens of the forum state). . . . Similarly, if a plaintiff seeks to have a purported class action remanded for lack of federal diversity jurisdiction under subsection 1332(d)(5)(B) ("limited scope" class actions), that plaintiff should have the burden of demonstrating that "all matters in controversy" do not "in the aggregate exceed the sum or value of $5,000,000, exclusive of interest and costs" or that "the number of all proposed plaintiff classes in the aggregate is less than 100."

28 U.S.C.A. § 1332, Senate Judiciary Committee Notes. It is well established in the Eighth Circuit that "[o]nce the proponent of federal jurisdiction has explained plausibly how the stakes exceed $5 million, then the case belongs in federal court unless it is legally impossible for the plaintiff to recover that much." *Raskas v. Johnson & Johnson*, 719 F.3d 884, 888 (8th Cir. 2013).

In *Raskas*, the plaintiffs filed three separate class action suits in Missouri state court against three drug companies, alleging that the companies encouraged consumers to throw out medications after their expiration date despite the defendants' knowledge that the medications were still safe and effective. 719 F.3d at 886. Plaintiffs defined the size of the class as only the consumers who had suffered injury by throwing away safe medications and replacing them. *Id.* at 886–87. The defendants established the amount in controversy by using the total sales of their respective medications in Missouri during the five-year statute of limitations time period. *Id.* Plaintiffs argued these sales figures were insufficient to satisfy the requirement, because they were only seeking to recover damages for medications discarded and replaced. *Id.* The court rejected plaintiffs' argument stating, "[W]hen determining the amount in controversy, the question 'is not whether the damages are greater than the requisite amount, but whether a fact finder might legally conclude that they are.' . . . The point is that a removing defendant is not required to prove the amount in controversy beyond all doubt or to banish all uncertainty about it." *Id.* at 887. Accordingly, the court denied the plaintiffs' motion to remand.

Nearly identically to the defendants in *Raskas*, here Progressive attempts to show possible aggregated damages using all policies sold in Minnesota. Progressive argues that Plaintiffs' allegations put at issue 637,258 personal automobile-insurance policies sold over the past six years to Minnesota residents who elected the $100 deductible, as well as another 655,483 policies sold with an elective $200 deductible. Opp'n Mem. 5, ECF No. 16. The premiums for each of these policies over the relevant time period are $58,073,024.23 and $20,450,588.49, respectively. *Id.* Progressive argues that because Plaintiffs seek a declaration that the subject policies are illegal and request disgorgement of premiums, they have put at least a possible $78 million in controversy. *See id.*

Plaintiffs represented at the hearing that the amount in controversy is merely $60,000 plus attorney fees given that they only seek the $100 deduction-related underpayment multiplied by the 600 individuals that will make up the class. However, Plaintiffs' Complaint also seeks a declaratory judgment that Progressive's practices are illegal, which puts Progressive's sale practices at issue and has broader implications than recovery of the $100 deductible. Pls. Reply Mem. 8, ECF No. 20. As Progressive has met its burden to plausibly show that nearly $78 million in insurance premiums may be in issue given Plaintiffs' request for declaratory relief, Plaintiffs must show to a legal certainty that it is impossible for them to collect more than $5 million should they prevail in the suit. *See Raskas*, 719 F.3d at 887–88; *see also* 28 U.S.C.A. § 1332, Senate Judiciary Committee Notes. Plaintiffs' estimation of damages do not satisfy their burden. Given that Progressive has explained how the stakes exceed $5 million, the case belongs in federal court because Plaintiffs have not proven to a legal certainty that it is impossible for them to recover that much. *See Raskas*, 719 F.3d at 887–88.

### III. RECOMMENDATION

Based upon the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that Plaintiffs' motion to remand to state court (ECF No. 7) be **DENIED**.

DATED: November 20, 2015              *s/Franklin L. Noel*
                                       FRANKLIN L. NOEL
                                       United States Magistrate Judge

Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **December 4, 2015**, written objections that specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within fourteen (14) days after service thereof. All briefs filed under the rules shall be limited to 3,500 words. A judge shall make a de novo determination of those

portions to which objection is made.

Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed by December 4, 2015 a complete transcript of the hearing.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.